GOVERNMENT EXHIBIT A  
1:22-CR-59

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE ALLEN SUPERIOR COURT 6 |
| | ) | |
| COUNTY OF ALLEN | ) | CASE NO: 02D06-1811-CM-005468 |

STATE OF INDIANA

V.

WILLIE JAMES HATCH

## DOMESTIC VIOLENCE DETERMINATION

The Court, in accordance with I.C. 35-38-1-7.7, having heard evidence at trial, or based on a factual basis provided as part of a guilty plea in this case, now finds that the Defendant has committed a crime of domestic violence, as defined by I.C. 35-31.5-2-78. The Defendant has been advised that upon conviction: he/she shall lose the right to possess a firearm, possession of a firearm or ammunition may constitute a separate crime, parenting time with minor children may be restricted, and other legal penalties may be applicable and should be discussed with his/her attorney.

"Crime of domestic violence," as defined by I.C. 35-31.5-2-78 means an offense or the attempt to commit an offense that:
  (1) has as an element the:
      (A) use of physical force; or
      (B) threatened use of a deadly weapon; and
  (2) is committed against a:
      (A) current or former spouse, parent, or guardian of the Defendant;
      (B) person with whom the Defendant shared a child in common;
      (C) person who was cohabiting with or had cohabited with the Defendant as a spouse, parent, or guardian; or
      (D) person who was or had been similarly situated to a spouse, parent, or guardian of the Defendant.

The Defendant was represented by counsel or made a valid waiver of counsel. The Defendant was advised of his/her right to a jury trial and either received a jury trial or knowingly waived that right.

11/9/18
_____
Date

_____
Allen Superior Court 6

Distribution:

Prosecuting Attorney
Case File
Defendant

Attachment B

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                                                     **Case No. 22-CR-52**

**TRAVIS M. PATTERSON, JR.**
    **Defendant.**

## DECISION AND ORDER

Defendant Travis Patterson moves to dismiss the indictment charging him with unlawful possession of a firearm following his conviction for a misdemeanor crime of domestic violence, arguing that 18 U.S.C. § 922(g)(9) is unconstitutional under the Second Amendment as construed in N.Y. State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022). I deny the motion. First, this court remains bound by the Seventh Circuit's decision in United States v. Skoien, 614 F.3d 638 (7th Cir. 2010) (en banc), rejecting a facial challenge to § 922(g)(9). See United States v. Farley, No. 22-cr-30022, 2023 U.S. Dist. LEXIS 21146, at *7 (C.D. Ill. Feb. 8, 2023). While Bruen modified the test for Second Amendment challenges, the Supreme Court did not abrogate Skoien, and lower courts are generally supposed to leave to higher courts the prerogative of overruling their own decisions, even where the reasoning underlying those decisions has been questioned by some other line of authority. See, e.g., Tenet v. Doe, 544 U.S. 1, 10-11 (2005). Second, it appears that every court to address the issue post-Bruen has agreed that § 922(g)(9) passes muster under the Court's "history and tradition" test. See United States v. Bruner, No. CR-22-518-SLP, 2023 U.S. Dist. LEXIS 51417, at *2 (W.D. Okla. Mar. 27, 2023) (collecting cases). I see no reason to depart from this consensus.

## I. FACTS AND BACKGROUND

On February 23, 2023, the government obtained an indictment alleging that, on November 14, 2021, knowing he had previously been convicted of a misdemeanor crime of domestic violence, defendant knowingly possessed a firearm, to wit, a 9 mm pistol with an obliterated serial number. In its response to defendant's motion to dismiss, the government discusses the circumstances of defendant's arrest in this case and the facts of his underlying DV battery conviction. (R. 24 at 2-3.) However, because defendant brings a facial challenge to § 922(g)(9), I do not consider these allegations.

Section 922(g) makes it a crime for certain prohibited persons to possess a firearm or ammunition. Sub.(g)(9) covers persons who have "been convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9). The term "misdemeanor crime of domestic violence" means a misdemeanor offense that has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by the defendant against various enumerated victims, e.g., a current or former spouse, a person with whom the defendant shares a child in common, or a person who is cohabiting with or has cohabited with the defendant as a spouse. 18 U.S.C. § 921(a)(33).

## II. SECOND AMENDMENT STANDARDS

The Second Amendment to the Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In District of Columbia v. Heller, 554 U.S. 570, 592 (2008), the Court held that the Amendment enshrines an individual right to possess and carry firearms for self-defense. The Court acknowledged that, like most rights, the right secured by

2

the Second Amendment is not unlimited. Id. at 626. While the Court did not purport to undertake an exhaustive historical analysis of the full scope of the Second Amendment, the Court stressed that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id. at 626-27; see also McDonald v. City of Chicago, 561 U.S. 742, 786 (2010) (repeating those assurances).

After Heller, the Seventh Circuit developed a two-step test for Second Amendment challenges. The threshold question was whether the regulated activity fell within the scope of the Second Amendment. Ezell v. City of Chicago, 846 F.3d 888, 892 (7th Cir. 2017). This would entail a textual and historical inquiry; if the government could establish that the challenged law regulated activity falling outside the scope of the right as originally understood, then the regulated activity was categorically unprotected, and the law was not subject to further Second Amendment review. Id.

If the government could not establish this—if the historical evidence was inconclusive or suggested that the regulated activity was not categorically unprotected—then the court would engage in an inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights. Id. At this second step, the court would evaluate the regulatory means the government had chosen and the public-benefits end it sought to achieve. Id. The Seventh Circuit described step two as "akin to intermediate scrutiny" and required the government to show that the challenged statute was substantially related to an important governmental objective. United States v. Meza-Rodriguez, 798 F.3d 664, 672 (7th Cir. 2015).

3

Case 2:22-cr-00052-LA   Filed 04/04/23   Page 3 of 10   Document 29

In <u>Bruen</u>, the Court held:

> Despite the popularity of this two-step approach, it is one step too many. Step one of the predominant framework is broadly consistent with <u>Heller</u>, which demands a test rooted in the Second Amendment's text, as informed by history. But <u>Heller</u> and <u>McDonald</u> do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

142 S. Ct. at 2127.

The Court set forth this test:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

<u>Id.</u> at 2129-30 (internal quote marks omitted).

The Court explained:

> The test that we set forth in <u>Heller</u> and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding. In some cases, that inquiry will be fairly straightforward. For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional. And if some jurisdictions actually attempted to enact analogous regulations during this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality.
> . . .
> [O]ther cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach. The regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868. Fortunately, the Founders created a Constitution—and a Second Amendment—intended to endure for ages to come, and consequently, to be

4

> adapted to the various crises of human affairs. Although its meaning is fixed according to the understandings of those who ratified it, the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated. . . .
>
> Much like we use history to determine which modern "arms" are protected by the Second Amendment, so too does history guide our consideration of modern regulations that were unimaginable at the founding. When confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy—a commonplace task for any lawyer or judge. Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are relevantly similar. . . .
>
> While we do not now provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment, we do think that Heller and McDonald point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense. As we stated in Heller and repeated in McDonald, individual self-defense is the central component of the Second Amendment right. Therefore, whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry.
>
> To be clear, analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check. On the one hand, courts should not uphold every modern law that remotely resembles a historical analogue, because doing so risks endorsing outliers that our ancestors would never have accepted. On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.

Id. at 2131-33 (internal citations, quote marks, and footnote omitted).

### III.  DISCUSSION

**A.    Skoien**

In Skoien, the Seventh Circuit rejected a Second Amendment challenge to § 922(g)(9). In so holding, the court engaged in historical analysis, citing founding era sources supporting categorical limitations on firearm possession by persons convicted of crime.  614 F.3d at 640.

5

The court further noted that such categorical limits on the possession of firearms "would not be a constitutional anomaly. Think of the First Amendment, which has long had categorical limits: obscenity, defamation, incitement to crime, and others." Id. at 641. To be sure, the Skoien court then proceeded to conduct means-ends scrutiny, citing empirical support for Congress's determination that domestic abusers should be disarmed. Id. at 642-44. But this does not erase the court's analysis at the first step, which comports with the test set forth in Bruen.

Defendant contends that Bruen abrogated Skoien. (R. 21 at 2 n.7; R. 28 at 1-2.) But as a district court in Illinois recently observed, the actual holding of Bruen was quite narrow, invalidating a single provision of New York's concealed-carry licensing regime. Farley, 2023 U.S. Dist. LEXIS 21146, at *5. The Justices also took pains to emphasize the petitioners' status as "law-abiding citizens" and refrained from criticizing other concealed-carry restrictions, including the requirement that permit-holders have no history of crime or mental illness. Id. at *6. As Justice Alito stressed in concurrence, "Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun." Bruen, 142 S. Ct. at 2157 (Alito, J., concurring). I agree with the Farley court that Skoien remains good law. Farley, 2023 U.S. Dist. LEXIS 21146, at *7 ("This Court cannot hold otherwise.") (citing Reiser v. Residential Funding Corp., 380 F.3d 1027, 1029 (7th Cir. 2004) ("Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, . . . so district judges must follow the decisions of this court whether or not they agree.")); see also United States v. Gleaves, No. 3:22-cr-00014, 2023 U.S. Dist. LEXIS 20328, at *8-9 (M.D. Tenn. Feb. 6, 2023) (holding that Bruen did not call into doubt previous Sixth Circuit decisions upholding § 922(g)).

**B.   Bruen**

Even if Bruen did abrogate Skoien, defendant's motion would fail.  Bruen requires me to address whether the Second Amendment's text covers the conduct regulated by § 922(g)(9) and whether that regulation is consistent with the nation's historical tradition of firearm regulation.

**1.   Text**

Defendant argues that the Second Amendment's plain text covers the conduct burdened by § 922(g)(9).  The statute prohibits him from possessing a gun, even for a lawful purpose such as self-defense.  (R. 21 at 5.)

The government responds that the conduct criminalized by § 922(g)(9) falls outside the text of the Second Amendment.  (R. 24 at 5.)  The government relies on the Supreme Court's explanation that the Amendment protects "'the right of law-abiding, responsible citizens to use arms' for self-defense."  Bruen, 142 S. Ct. at 2131 (quoting Heller, 554 U. S. at 635).  The government contends that a person convicted of a misdemeanor crime of violence "is exactly the kind of non-law-abiding, dangerous person that the Second Amendment does not protect."  (R. 24 at 7.)

Courts have differed over whether the right to bear arms is limited to "virtuous citizens." See United States v. Posey, No. 2:22-CR-83 JD, 2023 U.S. Dist. LEXIS 22005, at *12-15 (N.D. Ind. Feb. 9, 2023) (discussing the issue); United States v. Black, No. 22-133-01, 2023 U.S. Dist. LEXIS 2781, at *7 (W.D. La. Jan. 6, 2023) (collecting cases).  Post-Bruen, some judges have suggested that the Court used the language upon which the government relies to limit the scope of the Second Amendment right.  E.g., United States v. Porter, No. 22-00277, 2023 U.S.

Dist. LEXIS 43178, at *5 (W.D. La. Mar. 14, 2023) ("Thus, this Court is of the opinion that Porter, as someone who was convicted of domestic abuse battery and thus who is not 'law-abiding,' is not facially protected by the Second Amendment.").

Other courts have noted that the text of the Second Amendment does not qualify who may possess firearms, simply using the word "people." United States v. Bernard, No. 22-CR-03 CJW-MAR, 2022 U.S. Dist. LEXIS 218378, at *18 (N.D. Iowa Dec. 5, 2022) (finding that, as a textual matter, the Second Amendment covered the defendant, a person under the Constitution, despite his misdemeanor crime of violence conviction). The Bernard court concluded that whether a person is law abiding affects the ability of Congress to regulate that person's possession of firearms and is better addressed as part of the historical analysis. Id.; see also United States v. Rahimi, 61 F.4th 443, 452 (5th Cir. 2023) (explaining that Heller's reference to "law-abiding, responsible" citizens was shorthand meant to exclude groups that have historically been stripped of their Second Amendment rights).

I need not take a side. As discussed below, § 922(g)(9) is consistent with historical firearm regulations.

### 2. History

Defendant argues that the nation has no historical tradition of disarming people convicted of misdemeanors. (R. 21 at 1, 6-7.) He further contends that, until fairly recently, the law was not concerned with domestic violence. (R. 21 at 1, 8-11.) He concludes that, absent a historical tradition of disarming domestic abusers, § 922(g)(9) is facially unconstitutional. (R. 21 at 11-13.)

Defendant's focus is too narrow. As courts have held, prohibiting "violent criminals from possessing firearms, such as those who have been convicted of a misdemeanor crime of

8

domestic violence, is consistent with and analogous to prohibiting felons from possessing firearms." Bernard, 2022 U.S. Dist. LEXIS 218378, at *19.  While it is true that scholars have found little historical evidence of legislation regulating firearm possession due to domestic violence,[1] "the clear import from Bruen and its precedents is that regulations run afoul of the Second Amendment when they interfere with possession of firearms by law abiding citizens. In short, domestic violence misdemeanants are 'relevantly similar to felons' such that they can be 'denied weapons for the same reasons.'"  Id. at *19-20; see also Bruner, 2023 U.S. Dist. LEXIS 51417, at *4 (finding that domestic violence misdemeanants can logically be viewed as relevantly similar to felons who should be denied weapons for the same reasons).  Cf. Kanter v. Barr, 919 F.3d 437, 454 (7th Cir. 2019) (Barrett, J., dissenting), overruled in part by Bruen, 142 S. Ct. 2111 (2022) ("The historical evidence does, however, support a different proposition: that the legislature may disarm those who have demonstrated a proclivity for violence or whose possession of guns would otherwise threaten the public safety. This is a category simultaneously broader and narrower than 'felons'—it includes dangerous people who have not been convicted of felonies but not felons lacking indicia of dangerousness.").

Defendant relies on cases striking down § 922(g)(8), which prohibits firearm possession by persons subject to domestic violence restraining orders.  (R. 21 at 13, citing United States v. Perez-Gallan, No. 22-CR-00427-DC, 2022 U.S. Dist. LEXIS 204758 (W.D. Tex. Nov. 10, 2022); R. 28 at 3, citing Rahimi, 61 F.4th 443 (5th Cir. 2023).)  These out-of-circuit decisions are not binding on this court.

---

[1]The government takes issue with defendant's claim that domestic violence was accepted at the founding.  (R. 24 at 16-19.)  I need not wade into this debate.

9

Moreover, there are significant differences between § 922(g)(8) and § 922(g)(9).[2] As the Rahimi court stressed, § 922(g)(8) applies to persons who have been convicted of no crime; the domestic abuse proceeding that serves as the basis for § 922(g)(8)'s application is purely civil. 61 F.4th at 458-59. The court relied on this difference to distinguish historical "going armed" laws, which "only disarmed an offender after criminal proceedings and a conviction." Id. at 458. In contrast, § 922(g)(9) relies on a qualifying conviction to disarm a broadly dangerous class: domestic-violence misdemeanants. Porter, 2023 U.S. Dist. LEXIS 43178, at *8. While § 922(g)(9) was enacted less than 30 years ago, it shares a similar justification with these historical analogs: both sets of regulations were justified by a legislative determination of the dangerousness of a defined class. Id. at *9.

## IV.  CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion to dismiss (R. 21) is denied.

Dated at Milwaukee, Wisconsin, this 4th day of April, 2023.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge

---

[2]The government believes Rahimi was decided incorrectly and has petitioned for review by the Supreme Court. (R. 27 at 7.) Because Rahimi is distinguishable, I need not address its correctness.

10