### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

UNITED STATES OF AMERICA

v.

WILLIE J. HATCH

CAUSE NO.: 1:22-CR-59 HAB

### OPINION AND ORDER

After Defendant, Willie J. Hatch, allegedly sold methamphetamine to a confidential informant on multiple occasions, a grand jury indicted him on five drug counts, including four counts of distribution and one count of possession with intent to distribute methamphetamine. *See* 21 U.S.C. §841(a)(1) (Indictment, ECF No. 8, Counts 1-5). Hatch also faces two gun counts: possession of a firearm in furtherance of a drug trafficking crime (Count 6), and unlawful possession of a firearm by an individual convicted of a misdemeanor domestic relations offense, in violation of 18 U.S.C. § 922(g)(9) (Count 7). He now moves, under *New York State Rifle Ass'n v. Bruen*, 597 U.S. 1 (2022), to dismiss Count 7, arguing that this charge against him violates the Second Amendment. (ECF No. 36). For the following reasons, the Court denies the motion.

### DISCUSSION

#### A. *Legal Standard*

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). When considering a motion to dismiss a criminal indictment (or a particular Count of the indictment), the Court assumes all facts are true and views them in the light most favorable to the government. *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) (per curiam) ("An indictment is reviewed on its face, regardless of

the strength or weakness of the government's case."). A court may decide all questions of law raised in a motion to dismiss, including the constitutionality and interpretation of a federal statute. *See United States v. Sorich*, 523 F.3d 702, 706 (7th Cir. 2008).

When dismissal or partial dismissal of an indictment is sought on the basis of a statute's constitutionality, a Defendant may assert it is unconstitutional on its face or as applied. Facial and as-applied challenges differ in the extent to which the invalidity of a statute need be demonstrated. To succeed on a facial attack, the moving party must demonstrate that "no application of the statute would be constitutional." *Sabri v. United States*, 541 U.S. 600, 609 (2004). As-applied attacks challenge a set of rules in a statute, a subset of the statute's applications, or application of the statute to a specific set of facts. *See Educ. Media Co. at Va. Tech, Inc. v. Insley*, 731 F.3d 291, 298 n. 5 (4th Cir. 2013) ("an as-applied challenge is 'based on a developed factual record and the application of a statute to a specific person[.]'"). A "statute may be invalid as applied to one state of facts and yet valid as applied to another." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006). An as-applied challenge is the proper vehicle to challenge a statute if a "claimed statutory defect applies to a sub-category of the people affected by the law." Thus, for as-applied challenges, the petitioner must demonstrate "partial ... invalidation," such that a "statute may ... be declared invalid to the extent that it reaches too far, but otherwise [is] left intact." *Ayotte*, 546 U.S. at 329. Here, Hatch makes only a facial challenge to the statute.

### B. *Factual Background*

The facts are straightforward. On four occasions in September and October 2022, agents conducted controlled methamphetamine buys from the Defendant using a confidential informant. Subsequently, authorities executed a search warrant at Defendant's residence and found more methamphetamine and a firearm. The result was a criminal complaint followed by a federal

indictment on gun and drug charges. Count 7, charging the Defendant with possession of a firearm after having been convicted of a misdemeanor crime of domestic violence in violation of 18 U.S.C. §922(g)(9), spawned from Defendant's prior misdemeanor domestic battery conviction.[1]

### C. Bruen *Analysis*

The Second Amendment directs: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. As trite as it has become, in *Bruen*, the Supreme Court announced a new test for judging the constitutionality of firearm regulations. The Supreme Court rejected the two-step analysis that had emerged following *District of Colombia v. Heller*, 554 U.S. 570 (2008), calling it "one step too many." *Bruen*, 597 U.S. at 18. Instead, the Supreme Court announced the following standard for applying the Second Amendment:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Id*. at 24. (quotations omitted).

### D. Section *922(g)(9)*

The Indictment charges Defendant with violating 18 U.S.C. § 922(g)(9), which provides that:

> It shall be unlawful for any person ... who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign

---

[1] Defendant was convicted on November 19, 2018. The sentencing judge issued a "Domestic Violence Determination" finding that:

> in accordance with I.C. 35-38-1-7.7, having heard evidence at trial, or based on a factual basis provided as part of a guilty plea in this case, now finds that the Defendant has committed a crime of domestic violence, as defined by I.C. 35-31.5-2-78. The Defendant has been advised that upon conviction: he/she shall lose the right to possess a firearm, possession of a firearm or ammunition may constitute a separate crime, parenting time with minor children may be restricted and other legal penalties may be applicable and should be discussed with his/her attorney.

(ECF No. 40, Gov't Ex. A).

commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

A qualifying "misdemeanor crime of domestic violence" is one that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon" against a statutorily listed victim. Defendant does not contest that his offense qualifies as a misdemeanor crime of domestic violence. Instead, he contends that this restriction on his right to bear firearms is constitutionally infirm.

### 1. *United States v. Skoien* **is not binding on this Court**

Before turning to the heart of the Defendant's *Bruen* argument, the Court first addresses the Government's assertion that there is binding Seventh Circuit precedent on the issue that determines the Defendant's motion. The Government argues that the Court should apply the pre-*Bruen* precedent found in *United States v. Skoien*, where the Seventh Circuit, *en banc*, considered § 922(g)(9) and affirmed its constitutionality. 614 F.3d 638 (7th Cir. 2010).

A district court is bound to follow circuit court authority for its own circuit, in the absence of a Supreme Court ruling on the issue, unless powerfully convinced that the circuit court would overrule precedent at the first opportunity. *Brenner v. Brown*, 814 F. Supp. 717 (N.D. Ill. 1993). In the Government's view, *Skoien* remains good law because nothing in *Bruen* directly invalidated its holding. *United States v. Farley*, 2023 WL 1825066, at *3 (C.D. Ill. Feb. 8, 2023) (finding facial challenge to §922(g)(9) invalid under *Skoien*). The Defendant did not respond to the Government's argument seeking to apply *Skoien* to validate §922(g)(9), but even so, the Court is powerfully convinced that *Skoien* does not remain valid law in this Circuit following *Bruen*.

4

In *Skoien,* the Seventh Circuit determined that in the Founding Era, "[m]any of the states, whose own constitutions entitled their citizens to be armed, did not extend this right to persons convicted of crime." The Court found that:

> statutory prohibitions on the possession of weapons by some persons are proper – and, importantly for current purposes, that the legislative role did not end in 1791. That *some* categorical limits are proper is part of the original meaning, leaving to the people's elected representatives the filling in of details.

614 F.3rd at 640. A few paragraphs later, the Court explained:

> Categorical limits on the possession of firearms would not be a constitutional anomaly. Think of the First Amendment, which has long had categorical limits: obscenity, defamation, incitement to crime, and others. These categories are not restricted to those recognized in 1791, when the states approved the Bill of Rights.

*Id.* at 641 (internal citations omitted). These propositions, together with the statute's goal of "preventing armed mayhem," served as the basis for the Court's determination that, under intermediate scrutiny, §922(g)(9) was an "important governmental objective" and "[b]oth logic and data establish a substantial relation between §922(g)(9) and this objective." *Id.* at 642.

At both initial and final glances, *Skoien's* approach directly contravenes *Bruen*. The *Bruen* Court held that Second Amendment challenges to firearms regulations are not subject to judicial "means-ends scrutiny." *Bruen*, 597 U.S. at 17. But *Skoien* did just that to conclude that domestic violence misdemeanants were properly dispossessed of firearms under §922(g)(9). Although an oversimplification, *Skoien* held that because Congress concluded that existing felon-in-possession laws were not keeping firearms out of the hands of domestic abusers, it was a logical extension for Congress to prohibit firearm possession by those convicted of misdemeanor domestic violence. *Skoien*, 614 F.3d at 642. As sensible and logical as this approach might be, *Bruen* instructs that it is wrong:

> If the last decade of Second Amendment litigation has taught this Court anything, it is that federal courts tasked with making such difficult empirical judgments

5

regarding firearm regulations under the banner of "intermediate scrutiny" often defer to the determinations of legislatures. But while that judicial deference to legislative interest balancing is understandable—and, elsewhere, appropriate—it is not deference that the Constitution demands here. The Second Amendment "is the very *product* of an interest balancing by the people" and it "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms" for self-defense. *Heller*, 554 U.S. at 635, 128 S.Ct. 2783. It is this balance—struck by the traditions of the American people—that demands our unqualified deference.

*Bruen,* 597 U.S. at 26.

*Bruen* itself, did not address the ban on domestic violence misdemeanants from possessing firearms. What it did address was the constitutionality of a New York licensing scheme for carrying a handgun in public. In addressing that licensing scheme, the Court articulated a historical test for the scope of the Second Amendment's right to bear arms. *Id.* at 2129–30. For that test, the Court drew upon *Heller*, which had recognized a personal right to bear arms. *Heller,* 554 U.S. at 595. In recognizing that right, the Supreme Court considered the text and historical origins of the Second Amendment. *Id.* at 605–20. The Court noted that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" and felon dispossession statutes are "presumptively lawful." *Id*. at 626–27 & n. 26.

*Skoien* upheld the constitutionality of §922(g)(9) and used *Heller* to do it; but it did so by applying a test that the Supreme Court abolished in *Bruen.* The *Bruen* framework "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." 597 U.S. at 26. First, the Court looks to the Second Amendment's "plain text." If that text presumptively protects the individual's conduct, then courts must ask whether the government can "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* To roughly summarize this second step, the government has the burden of identifying "relevantly similar" historical analogues for the

6

challenged regulations. If the government can show sufficient historical evidence of laws placing similar restrictions on the right to keep and bear arms, then the challenged law may pass constitutional muster. *See id.* at 28–29. *Skoien* did not conduct this type of analysis. Thus, the Court cannot conclude its holding remains good law in the post-*Bruen* environment. *See Atkinson v. Garland,* 70 F.4th 1018 (7th Cir. 2023) (remanding because pre-*Bruen* §922(g)(1) cases "moved straight to the means-end analysis" and the district court did not conduct the analysis *Bruen* requires). Accordingly, the Court declines to adopt the holding in *Skoien* as binding precedent. *See United States v. Johnson*, ___ F.Supp. 3d ___, 2023 WL7284848 at *2, n. 1 (E.D. Wis. Nov. 3, 2023) (noting in decision that the court previously applied *Skoien* in a post-*Bruen* challenge, the Seventh Circuit in *Atkinson v. Garland,* 70 F.4th 1018, 1022 (7th Cir. 2023) compelled the Court to undertake the *Bruen* analysis).

   2. *The Court Assumes, without Concluding, that Defendant is Among the "People" Protected by the Second Amendment*

Turning now to the *Bruen* analysis, the threshold question a court must address is whether the statute in question regulates conduct protected by the Second Amendment. The parties dispute whether the Second Amendment's plain text covers Defendant's conduct—specifically, is Defendant one of the "people" whose right to bear arms is guaranteed under the Second Amendment.

Section 922(g)(9) criminalizes possession of a firearm, which is conduct expressly protected by the Second Amendment. Thus, from this standpoint, Defendant argues he is among the "people" protected by the plain text of the Second Amendment. The Government argues, however, that the Second Amendment applies only to law-abiding, responsible citizens and Defendant's misdemeanor conviction disqualifies him from being a law-abiding person. In other words, the Government would read persons who are not law-abiding out of the definition of "the

people" referred to by the Second Amendment. To that end, the Government points by analogy to this Court's previous decisions wherein the Court found that felons are not "law-abiding responsible citizens" under *Heller* and thus, are not among the people protected by the Second Amendment. *See United States v. Drake*, 2023 WL 8004876, at *4–5 (N.D. Ind. Nov. 16, 2023) (plain text does not protect convicted felons); see also, *United States v. Brady*, 2023 WL 7553859 (N.D. Ind. Nov. 13, 2023) ("felons are not among 'the people' entitled to bear arms).

It's harder to hit a moving target than a stationary one. And the surge in *Bruen* caselaw is cutting a swath through gun regulations. This Court has previously acknowledged that "there is a healthy debate in the case law about who 'the people' are." *United States v. Cummings*, 2023 WL 3023608, at *1 (N.D. Ind. Apr. 20, 2023). Compare *United States v. Calhoun,* 2024 WL 36977 (N.D.Ill. January 3, 2024) (the Second Amendment's plain text protects possession of firearms by felons) (citing similar cases) with *United States v. Brown*, 2023 WL 8004290, at *2 (N.D. Ill. Nov. 17, 2023) ("The 'people' of the Second Amendment are not dangerous felons, so the restriction of their rights to bear arms is not an infringement on the Constitution."). And, although *Atkinson v. Garland* gave the district courts optimism that there would be binding Seventh Circuit precedent to settle the debate, the Seventh Circuit did not reach the question. 70 F.4th at 1024 (remanding to allow the government to develop on remand its argument that the Amendment's plain text does not cover felons). Perhaps clarification is coming from the Supreme Court as it considers *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, No. 22-915, 2023 WL 4278450 (U.S. June 30, 2023). Perhaps not. For now, however, the Court will assume, without deciding, that Defendant is part of the "people" under the Second Amendment.

> 3. *§ 922(g)(9) is Consistent with the Nation's Historical Tradition of Firearm Regulation*

The history of regulation of domestic abuse and the possession of firearms by domestic abusers is relatively recent. See *United States v. Ryno*, 2023 WL 3736420, at *15 (D. Alaska May 31, 2023) ("Whether 1938 or 1996, the weight of this historical evidence nonetheless indicates that § 922(g)(9) is a creature of the twentieth century). It makes sense then, that Defendant argues that there is no historical evidence to support disarming domestic abusers.

There is little debate that while domestic violence has been a problem since the founding of this country, the government did not intervene to disarm persons convicted of domestic violence until very recently. The Government concedes as much. (ECF No. 38 at 7: "laws prohibiting convicted domestic abusers from possessing firearms did not exist at the time of the Founding."). Because, as it concedes, the founders did not have the same concerns as exist in today's society, the Government relies on what *Bruen* described as the "analogical" historical inquiry to meet its burden. The Government argues that historically, the state disarmed groups of individuals that were perceived to be violent or dangerous to society—that is, those who "threatened violence and the risk of public injury—and urges that § 922(g)(9) is relevantly similar to this tradition of disarming dangerous people. (*Id.* at 9-14). Likewise, the Government argues that historical precedent exists for disarming "violent, convicted individuals." (*Id.*)

After considering the parties' briefs, the Court agrees that the Government has identified "a well-established and representative historical analogue" to disarming domestic abuse misdemeanants—namely, the historical treatment of dangerous persons and felons. Section 922(g)(9) is "relevantly similar" to our nation's historical tradition of disarming groups of persons deemed to pose a threat of violence to others and to the community. And, while post-*Bruen* district court decisions are a moving target, *Bruen* has not yet splintered the courts as to the issue presented in this case. There is consensus among every district court to have considered facial challenges to

§922(g)(9) that it withstands constitutional muster. *See United States v. Nutter*, 624 F. Supp. 3d 636, 639-45 (S.D.W.V. 2022) ("The prohibition of possession of firearms by domestic violence misdemeanants, and other groups identified as dangerous, is supported by history."); *United States v. Donahue*, 2023 WL 4372706, at *3-4 (S.D. Tex. July 5, 2023) (same); *United States v. Hughes*, 2023 WL 4205226, at *4-12 (D.S.C. June 27, 2023) (noting that *Bruen* counsels the court to construe the "societal problem" broadly and finding analogous penalties to § 922(g)(9) that evidence of intent at the founding to govern perceived bad behavior by domestic abusers); *United States v. Ryno*, Case No. 3:22-cr-00045, 2023 WL 3736420, at *14-16 (D. Ak. May 31, 2023) (relying on proposed language from state ratification conventions, historical treatment of dangerous persons and felons and historical use of surety for preventative firearm misuse as informative on issue of whether § 922(g)(9) is consistent with Nation's tradition of firearm regulation); *United States v. Brooks,* 2023 WL 7706554, at *7 (N.D. Iowa Nov. 15, 2023); *United States v. Farley*, No. 22-cr-30022, 2023 WL 1825066, at *3 (C.D. Ill. Feb. 8, 2023); *United States v. Jackson*, 622 F. Supp. 3d 1063, 1067 (W.D. Okla. 2022).

Much of the same historical evidence set forth in the above cases has been cited by the Government in its brief (ECF No. 38, 9-14). And *Bruen* acknowledged that "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin. Bruen*, 597 U.S. at 30. Given the analysis undertaken in the above cases, the Court need not engage in a protracted analysis to reach the same conclusion already reached by every other court that has considered §922(g)(9)'s constitutionality post-*Bruen*. Accordingly, the Court finds §922(g)(9) regulates conduct protected by the Second Amendment but is consistent with the nation's traditional regulation of possession of firearms. The Defendant's Motion to Dismiss Count 7 is DENIED.

## CONCLUSION

Based on the above, the Defendant's Motion to Dismiss (ECF No. 38) is DENIED. The Court will enter a trial scheduling order by separate entry.

SO ORDERED on January 30, 2024.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT